## Forsberg v. Culhane

48

*Sue N. Lang,* for plaintiff.
*Oscar S. Bortner,* for defendant.

BODLEY, J., May 11, 1973.—Plaintiffs seek specific performance of a contract to purchase real estate. A hearing has been held and briefs of counsel have been submitted as required by the chancellor.

We find the following facts:

On August 2, 1968, plaintiffs and defendant entered into a written agreement of sale for premises located at 80 Quaker Hill Road, Levittown, Bucks County, the same premises in which plaintiffs had resided under written agreement of lease since 1965. The agreement provided for a consideration of $12,750 with settlement to be held on or before August 31, 1968. Prior to the settlement date, the real estate broker, through whom the premises had first been leased to plaintiffs and through whom the agreement of sale was negotiated, advised plaintiffs that the title company would require proof of death of the seller's husband before it would insure title. The broker further advised plaintiffs that it would be well to clear up the title question at the time of his purchase rather than let it rest until a later time. This sound advice was accepted by plaintiffs but proved to be a formidable impediment to the intended closing.

Inasmuch as defendant's husband had been lost at sea, no ordinary death certificate, such as that issued by a Bureau of Vital Statistics, could be ob-

tained. However, defendant informed the broker that a certificate of a Coast Guard inquiry or inquest, establishing the fact of death, could be obtained, since the same had been issued in connection with defendant's settlement of a court action against her deceased husband's maritime employer.

Inasmuch as the settlement date was then approaching, a written extension of time for settlement was executed by the parties providing for settlement on or before September 16, 1968. No further writings were signed by the parties, but it was conceded by all parties, including the broker who was then acting as agent for both, that by mutual consent the date of settlement was postponed indefinitely, pending defendant's successfully procuring the required certificate of the Coast Guard inquiry. From August 1968 throughout the fall and winter months and continuing into the year 1969, plaintiffs continually inquired of the realtor as to when the settlement might be completed. Plaintiffs were told that defendant was continuing her efforts to secure the necessary proof of death.

Eventually, defendant instructed the realtor to notify plaintiffs that, since settlement had not been held as provided for, the agreement of sale was to be terminated and that, as well, their lease would not be renewed at the expiration of the then current term. Such notice was given plaintiffs by the realtor on June 25, 1969. On July 8, 1969, in response thereto, plaintiffs' attorney wrote to defendant requesting that she schedule a settlement pursuant to the terms of the agreement of sale. It should be noted here that the agreement contained the usual provision:

"In the event the Seller is unable to give a good and marketable title or such as will be insured by a reputable Title Company, Buyer shall have the option of taking such title as the Seller can give without abate-

ment of price or of being repaid all monies paid by Buyer to the Seller on account of the purchase price."

Implicit, therefore, in the buyers' effort to arrange for settlement through counsel at this time was the decision to accept such title as could be delivered by Mrs. Culhane. As of that date, she still had failed to produce the proof of death required by the title company.

No settlement was scheduled or held as a result of this request nor as the result of a further communication to defendant from plaintiffs' counsel. In view of this lack of communication, plaintiffs' counsel made efforts on his own to secure the Coast Guard certificate without success while, in the meantime, plaintiffs continued to reside in the premises, paying their monthly rental pursuant to the lease agreement by checks endorsed with the following legend:

"Settlement for sale of 80 Quaker Hill Road, Levittown, Pennsylvania, home to payor on 31 Aug. 1968 delayed at request of Seller. This instrument not constituting a release in the agreement."

These checks were issued, received and accepted in due course each month from the time fixed for settlement to the date of hearing.

Eventually on June 5, 1970, defendant's counsel wrote to plaintiffs directing them to vacate the premises. At this point, plaintiffs secured local counsel, other counsel referred to having been located in Philadelphia, which resulted in the preparation and filing, on July 8, 1970, of the complaint in equity now before the court.

It should be observed here that the certified copy of the Coast Guard inquest, which was the proof of death required by the title company and the only cause of the delay in settlement, so far as the evidence reveals, was at all times in possession of defendant's

Pittsburgh attorney. This fact was unknown to defendant who at all times acted in good faith, as did plaintiffs herein. Defendant had many times requested the certificate from her attorney but never received the same, being advised that it was not to be located. It was only after the institution of this action and defendant's securing of new counsel that the certificate of the Coast Guard inquest was found. The said certificate was found in defendant's former counsel's file where it had rested throughout the period between the execution of the agreement of sale and the eventual decision on the part of defendant to attempt to withdraw from the agreement.

As indicated heretofore, all evidence pointed unerringly to the conclusion that both parties acted in good faith, and that neither party intentionally delayed the intended settlement. By their conduct, the provision in the agreement of sale, to the effect that the time fixed therein for settlement should be of the essence of the agreement, was clearly waived by the parties.

Until June of 1969, neither party could be said to have been put to an election respecting the taking or conveying of an uninsurable title, with the cloud upon it growing out of the questionable legal status of defendant's husband. The entire history of the matter until that time indicated only plaintiffs' understandable desire to receive an insurable title at settlement as well as the joint efforts of plaintiffs and defendant alike to remove this cloud on the title.

There is then a question posed as to the delay of approximately one year between notice upon defendant's behalf in June 1969, of her intention to terminate the agreement and the filing of the action in July of 1970 by plaintiffs. Are plaintiffs to be precluded under the laches doctrine from their equitable remedy of

specific performance? It would appear that the only explanation offered by plaintiffs for this delay was the time consumed by their counsel in his "many efforts" to secure proof of death of defendant's husband. The chancellor accepts this explanation as evidence of plaintiffs' continuing effort to bring the matter to a conclusion, as evidence of his not having slept upon his rights and as evidence of his persistent effort to conclude the final settlement. It must be remembered also that immediately prior to this period of apparent delay were counsel's efforts, perhaps not as forthright as may be, to cause defendant to schedule a settlement date and place. In addition, defendant by her own inaction acquiesced, it may be said, in the further time lag. Under all these circumstances, the chancellor does not believe that the delay was excessive nor that the passage of time, reasonably explained, should bar plaintiffs' claim.

Defendant points to a "hardship" upon her relating to the increase of the value in the property between the date of the original agreement of sale, August 2, 1968, and the present time. Without question, the value of the property has appreciated substantially above the consideration recited in the agreement. This is not a case, however, of inadequacy of purchase price such as might defeat an action in equity by the purchaser for specific performance: Payne v. Clark, 409 Pa. 557 (1963). Defendant does not suggest that the consideration recited in the agreement was not arrived at as the result of an arm's length transaction, nor is it suggested that there was any fraud or deception of any kind which led to her execution of the agreement of sale. The long delay between the date of the agreement and the present must be laid at the footsteps of defendant who acquiesced in the delay for the period between August 31, 1968, and June 25, 1969, when plaintiffs were notified of her decision to terminate

the agreement as well as the further delay until July 1970, when she once again attempted to end the matter. And at all times during these periods the means of bringing the matter to an end by way of a transfer of title were immediately available. The certificate rested in her attorney's file. Moreover, although defendant very candidly acknowledged that this was the case, she never communicated to plaintiffs the fact of her eventual procuring of the missing certificate until the hearing.

There is no indication in the record that plaintiffs were not at all times ready, willing and, indeed, anxious to complete the settlement. There is no suggestion that plaintiffs were unable to fulfill their part of the bargain by paying the balance of the purchase price at settlement on August 31, 1968, or at any later date.

Specific performance is an extraordinary remedy which is not available as a matter of right, but rather is within the sound discretion of the chancellor. It will not be granted unless the plaintiff is clearly entitled thereto and in a situation where no adequate remedy of law exists: Portnoy v. Brown, 430 Pa. 401 (1968).

The chancellor has concluded that the parties entered into a binding agreement of sale for the subject real estate; that the delay in the settlement was occasioned by, first, the mutual agreement of the parties until June 25, 1969, and, second, by the refusal of defendant to voluntarily conclude settlement thereafter; and that throughout the entire period until the institution of suit the occasion for the delay, the missing certificate of death, grew out of the defendant's failure to produce that which she constructively possessed albeit in her counsel's file. Under these circumstances, the chancellor concludes that plaintiffs are entitled to the specific performance they seek.

## DECREE NISI

And now, May 11, 1973, defendant, Mary Jean Culhane, is ordered and directed to execute and deliver to plaintiffs a general warranty deed to the premises described in the complaint filed in this action, upon plaintiffs paying over to defendant the balance of the consideration money indicated in said agreement of sale at a duly held settlement to be scheduled and held for the purpose of completing the said transfer within 90 days of this date. This decree nisi shall become the final decree of this court unless exceptions are filed hereto within 20 days hereof.